```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
SAMUEL O. JACOBS,

                                  Plaintiff,
                                                                    OPINION & ORDER
           - against -
                                                                    No. 21-CV-10577 (CS)
KENT JACOBS, DUTCHESS COUNTY FAMILY
COURT and POUGHKEEPSIE, NY,

                                  Defendants.
-------------------------------------------------------------x
```

Appearances:

Samuel O. Jacobs
Jamaica, New York
*Pro Se Plaintiff*

Kent Jacobs
Hopewell Junction, NY
*Pro Se Defendant*

Charles F. Sanders
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendant Dutchess County Family Court*

Seibel, J.

Before the Court are the motions to dismiss of Defendants Kent Jacobs ("Kent") and Dutchess County Family Court ("DCFC"). (ECF Nos. 16, 25-26, 28.) For the following reasons, the motions are GRANTED.

I. **BACKGROUND**

I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended Complaint, (ECF No. 24 ("AC")), Initial Complaint, (ECF No. 1 ("IC")), and opposition

submissions, (ECF No. 27 ("P's Opp. 1"); ECF No. 29 ("P's Opp. 2")).[1] *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se* plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[2]

### A. Factual Background

Plaintiff Samuel Jacobs ("Samuel") is an 80-year-old U.S. army veteran. (IC at 7, 17.) In the past, he went to schools, where he "entertain[ed] [the] students and staff with his original storytelling and music." (AC at 12.)

Plaintiff states that in September of 2014, he began to suspect that his son Kent was having problems and potentially using prescription medications with dangerous side effects. (AC at 9; P's Opp. 2 at 2.) "[A]cting upon [his] paternal instincts," Samuel called Kent, and when Kent did not return his call, Samuel wrote Kent a letter "clearly stat[ing] that [his] intent was to try and help him." (P's Opp. 2 at 2.) On September 29, 2014, Kent filed a complaint against Samuel in DCFC.[3] (IC at 14.) On April 23, 2015, Judge Joseph Egitto of DCFC found

---

[1] Citations to the IC, AC, P's Opp. 1, and P's Opp. 2 refer to the pagination generated by the Court's electronic filing system.

[2] The Court will send Plaintiff and Kent copies of all unpublished decisions cited in this Opinion and Order.

[3] I take judicial notice of the state court action involving Samuel, (Docket No. O-05137-14), as well as corresponding orders, *see Jacobs v. Jacobs*, 27 N.Y.S.3d 884 (App. Div.) (mem.), *leave to appeal denied*, 28 N.Y.3d 901 (2016); *Jacobs v. Jacobs*, 90 N.Y.S.3d 131 (App. Div. 2018). Courts can "look to public records, including complaints filed in state court, in deciding a motion to dismiss." *Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide,*

that Samuel had committed the family offense of harassment in the second degree and issued an order of protection with a duration of two years.  *See Jacobs*, 27 N.Y.S.3d at 884.  The Second Department affirmed, *id.*, and the Court of Appeals denied Samuel's motion for leave to appeal, *see Jacobs*, 28 N.Y.3d at 901.  On December 8, 2017, Judge Egitto extended the order of protection for an additional five years, and on December 19, 2018, the Second Department again affirmed.  *See Jacobs*, 90 N.Y.S.3d at 133.

Samuel had been represented by court-appointed attorney Lawrence Moore before the DCFC but believed Mr. Moore "refused/ignored two (2) letters," dated September 22, 2017 and September 27, 2017, "directing him to appeal a ruling by Judge Egit[t]o."  (IC at 7; *see* AC at 10.)  After the time to appeal had elapsed, Samuel notified Judge Egitto that he had fired Moore and intended to continue *pro se*.  (IC at 7, 14.)  But Judge Egitto allegedly denied Samuel's request.  (*Id.* at 7.)  Samuel alleges that Judge Egitto violated his Fifth and Fourteenth Amendment rights because he allowed Kent to proceed *pro se* but denied Samuel "that same right," which left him "on trial with no legal defense."  (*Id.* at 15.)

Samuel claims that Kent committed a criminal act by filing false charges against Samuel. (*Id.* at 14.)  Samuel alleges that Kent accused him of child abuse with the intention that Samuel would be convicted of a felony and not able to teach again.  (*Id.*)  Samuel also claims that Judge Egitto "sentenced" him to seven years, (AC at 10), an apparent reference to the two-year order of protection combined with the five-year extension thereof.

On February 27, 2018, Samuel wrote a letter to Judge Egitto regarding an upcoming court appearance that he could not attend.  (*Id.* at 20.)  He also alleges he called the court and offered

---

*Inc.*, 369 F.3d 212, 217 (2d Cir. 2004).  I consider state court records for the fact that they exist and for the fact of what was said in them, but not for the truth of the matters asserted therein. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

3

to do a telephone conference but was told that that was not necessary. (*Id.* at 9.) On or about April 6, 2018, Judge Egitto issued a warrant for Samuel's arrest. (IC at 15-16; AC at 23.)[4] Samuel alleges he received a phone call from the police telling him about the warrant, but Samuel thought it was mistake and the police then suggested he "contact the court to correct the error." (AC at 9.) Samuel alleges this "warrant was issued with no valid [p]robable [c]ause," in violation of his rights under the Fourth, Fifth, and Fourteenth Amendments. (IC at 15.) Samuel wrote a letter to Judge Egitto on May 4, 2018 – "[o]n advi[c]e from the police" – asking for an explanation, (*id.* at 15, 17), but claims his letter was ignored. He also allegedly submitted a "Motion to Explain Arrest Warrant" to DCFC, which was delivered on July 30, 2018.[5] (*Id.* at 10.) On August 6, 2018, Judge Egitto issued an order stating that he would not consider any motions filed on Samuel's behalf unless they were submitted by counsel. (AC at 16-17.) And on August 8, 2018, the principal court attorney for DCFC wrote to Samuel informing him that his previous "motion to explain arrest warrant" was "being returned to you as it is not a proper motion. There is no authority to make such a motion." (*Id.* at 14; IC at 11.) Plaintiff claims, however, that this "motion is still waiting for a decision." (AC at 9.)

As a result of Defendants' actions, Samuel claims that his ability to walk was severely damaged, as he had to walk twelve blocks to and from the subway and go up and down forty flights of stairs to travel to DCFC. (*Id.* at 11.) He claims he is no longer able to walk without a walker or a cane. (*Id.*) He also claims he suffers from stress and anxiety after being on trial for

---

[4] On the "Warrant of Arrest" attached to the AC, there is a diagonal line across the page and the handwritten notation, "Vacated By Court 8/21/18." (AC at 22.)

[5] In his opposition to DCFC's motion to dismiss, Samuel stated he filed the Motion to Explain Arrest Warrant on August 23, 2018, (P's Opp. 1 at 2), but that is the hearing date Samuel put on the motion, (IC at 10).

child abuse and being a convicted felon, even though he has not committed any crime. (*Id.*) Additionally, given (what he believes to be) his felony conviction, he can no longer teach or work with children, and so his "right to work to work was taken away by defendant Kent Jacobs, and the Family Court." (*Id.*)

### B. Procedural History

On December 8, 2021, Samuel filed a complaint in this Court against Kent, Judge Egitto, DCFC, and the City of Poughkeepsie, New York, alleging violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. (IC at 2, 5-6.) On February 8, 2021, Kent filed his Answer. (ECF No. 13.) On February 11, 2022, Defendants DCFC and Judge Egitto filed a pre-motion letter in anticipation of their motion to dismiss. (ECF No. 15 ("DCFC Mem.") at 1.) The Court held a pre-motion conference on March 18, 2022, at which the Court granted Samuel leave to amend his complaint and dismissed the City of Poughkeepsie as a defendant. (Minute Entry dated Mar. 18, 2022.) On April 8, 2022, Samuel filed an Amended Complaint, alleging that Kent, DCFC, and the City of Poughkeepsie violated his Fourth, Fifth, Eighth, and Fourteenth Amendments. (AC at 2, 5-6.)[6] Because Samuel did not list Judge Egitto as a Defendant in his Amended Complaint, (*see id.* at 5-6), the Clerk terminated him as a defendant. On the "Defendant Information" page, however, Samuel added the name and contact information of the Assistant Attorney General ("AAG") representing DCFC. (*Id.* at 6.)

On April 13, 2022, Defendant DCFC filed a letter, supplementing its February 11, 2022 letter. (ECF No. 25 ("DCFC Mem. 2").) The Court ordered the Clerk of Court to strike the AAG as a Defendant, finding that Samuel included the AAG's contact information because the

---

[6] Despite my having dismissed the City of Poughkeepsie as a defendant, Plaintiff re-named the City in the AC, apparently under the erroneous impression the Judge Egitto was an employee of the City or that the DCFC was an arm of the City. (*See* AC at 7.)

5

AAG represents DCFC, not because he intended to name the AAG as a defendant, and deemed the April 13th letter, and Defendants' previous February 11th letter, to be DCFC's motion to dismiss. (ECF No. 26.) Kent subsequently also filed a motion to dismiss, (ECF No. 28 ("D Jacobs Mem.")), and Samuel filed separate oppositions to each motion, (P's Opp. 1; P's Opp. 2).

## II. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss under Rule 12(b)(6):

> a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.  Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint.  For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint; mere notice or possession is not enough. And even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document, and it must be clear that there exist no material disputed issues of fact regarding the relevance of the document.

*United States of America ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (cleaned up), *cert. denied*, 212 L. Ed. 2d 764 (U.S. May 2, 2022) (No. 21-1314).  A court may also consider matters "of which judicial notice may be taken under Fed. R. Evid. 201." *Kramer*, 937 F.2d at 773.

Plaintiff attaches a variety of exhibits to his IC and AC, including his letters to DCFC and Judge Egitto, decisions of the court, and communications from DCFC.  (IC at 10-17; AC at 12-27.)  I will consider these exhibits not only because they are attached to the complaints, but because they are integral to them, in that they form the factual basis for many of the allegations in the IC and AC, and because Plaintiff relied on them in framing his allegations.  Neither party disputes their authenticity, accuracy or relevance.

   **B.** ***Pro Se* Plaintiffs**

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that

they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up).  Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded.  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

### III.     DISCUSSION

#### A.     Eleventh Amendment Immunity

Plaintiff's claims against Defendant DCFC are barred under the Eleventh Amendment.  "As a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity."  *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (cleaned up).  "The immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Id*. (cleaned up).  New York has not waived its Eleventh Amendment immunity to suit in federal court, and Congress did not abrogate the states' immunity in enacting 42 U.S.C. § 1983.  *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977).

As DCFC is part of the New York State Unified Court System, which is an agency of the State of New York, this state-court defendant is immune from suit under the Eleventh Amendment.  *See Gollomp*, 568 F.3d at 368 ("[T]he New York State Unified Court System is unquestionably an arm of the State and is entitled to Eleventh Amendment sovereign immunity.") (cleaned up); *Roger of the Fam. Forrest v. 45 C.F.R.§ 75.2 IV-D Contractor Steve Banks*, No. 18-CV-10866, 2019 WL 4194332, at *3 (S.D.N.Y. Aug. 30, 2019) (New York

Family Court immune from § 1983 suit under Eleventh Amendment). Samuel's § 1983 claims against DCFC are dismissed as barred by the Eleventh Amendment.[7]

**B.      Statute of Limitations**

Kent argues that Samuel's claims are time-barred. (D Jacobs Mem. at 2.) "The statute of limitations for actions under § 1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits." *Harris v. Bd. of Educ.*, 230 F. Supp. 3d 88, 97 (E.D.N.Y. 2017) (cleaned up); *see Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015). The statute of limitations for a § 1983 action in New York is three years. *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013); *Lynch v. Suffolk Cnty. Police Dep't, Inc.*, 348 F. App'x 672, 674 (2d Cir. 2009) (summary order). Samuel filed his complaint on December 8, 2021, and thus any claims arising prior to December 8, 2018 are time-barred.

Samuel's allegations against Kent are that he "used Judge Egit[t]o and the Family Court of Poughkeepsie, NY to damage my reputation and right to work which violated my rights under Article 41, and the 14th Amendment." (IC at 7.) He asserts that Kent knowingly filed a false report and "provided proof of his crime in . . . his Sworn Affidavit dated 11/5/2014" in which "[h]e confessed that 'he never introduced his son to [Samuel].'" (AC at 10.) All of Samuel's allegations are based on actions that occurred prior to December 8, 2018: Kent filed his charges

---

[7] Any such claim would also be barred by the statute of limitations, as discussed below. To the extent Samuel intended to bring claims against Judge Egitto, they would also be dismissed, not only based on the statute of limitations, but also because judges are entitled to absolute immunity from suit. *See Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009) ("[J]udges generally have absolute immunity from suits for money damages for their judicial actions"). Likewise, if Samuel intended to bring a claim against the AAG, it would also be dismissed on grounds of immunity, *see Wang v. Logue*, 351 F. App'x 510, 510 (2d Cir. 2009) ("[AAG] is absolutely immune from suit for actions taken during [his] representation of State defendants."), and because the AC contains no facts regarding the AAG. Any claims against the City of Poughkeepsie are meritless and therefore dismissed, given that the AC contains no allegations (let alone timely ones) regarding actions of the City or any employee thereof.

against Samuel on September 29, 2014, (IC at 14); his sworn affidavit is from November 5, 2014, (AC at 26); an initial order of protection was entered on April 23, 2015, *see Jacobs*, 27 N.Y.S.3d at 884; and an extension of the order of protection was entered on December 8, 2017, *Jacobs*, 90 N.Y.S.3d at 133.[8]

Samuel argues that Kent "cannot claim Statute of Limitations because his violation of my rights under the Constitution is presently being litigated. There is no Statute of Limitations on the crime of violating the Constitution." (P's Opp. 2 at 3.) Samuel is incorrect. There are indeed statutes of limitations for constitutional claims arising under § 1983, and as set forth above, in New York it is three years. That his case is currently being litigated – a fact not apparent from the record – would not defeat the statute of limitations. Under federal law, a claim arising under § 1983 "accrues," meaning the statute of limitations starts to run, when the plaintiff "knows or has reason to know of the injury which is the basis of his action." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (cleaned up); *see Pinaud v. Cnty. of Suffolk*, 52 F.3d 1139, 1157 (2d Cir. 1995) ("[W]hen a plaintiff knows or ought to know of a wrong, the statute of limitations on that claim starts to run . . . ."). All of the above claims arise from alleged injuries of which Samuel knew, and that therefore accrued, prior to December 8, 2018, and therefore his claims against Kent are time-barred.

---

[8] The extension of the order of protection was affirmed on December 19, 2018, but the matter is listed as fully submitted as of November 5, 2018, *see Jacobs*, 90 N.Y.S.3d at 131, so even if Samuel had alleged that Kent's participation in the appellate litigation was a violation of Samuel's rights (which he has not), Samuel has not pleaded, and there is no reason to believe, that any such action by Kent was within the limitations period. Likewise, the latest action on Judge Egitto's part was on August 8, 2018, more than three years before this case was filed.

### C.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint, after having the benefit of a pre-motion letter from Defendant DCFC outlining the proposed grounds for dismissal, (ECF No. 15), and the discussion at the March 18, 2022 pre-motion conference, (*see* Minute Entry dated Mar. 18, 2022). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up) (emphasis added); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that

11

would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions are GRANTED. The Clerk of Court is respectfully directed to terminate ECF No. 28 and close the case.

**SO ORDERED.**

Dated: October 18, 2022
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.